UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

BRUCE F. PEACH

        Plaintiff,

v.                         **REPORT AND RECOMMENDATION**
                                     08-CV-0741 (FJS)

MICHAEL J. ASTRUE
COMMISSIONER OF SOCIAL SECURITY,

        Defendant,

## I.     Introduction

Plaintiff Bruce F. Peach brings this action pursuant to the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g), 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for Disability Insurance Benefits ("DIB").[1] Specifically, Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") was not supported by substantial evidence and contrary to the applicable legal standards. The Commissioner argues that the decision was supported by substantial evidence and made in accordance with the correct legal standards.

For the reasons set forth below, the Court finds that the Commissioner's decision is supported by substantial evidence and free of legal error. Therefore, the Court recommends that Plaintiff's Motion for Judgment on the Pleadings be denied and Defendant's Cross-Motion for Judgment on the Pleadings be granted.[2]

---

[1] This case was referred to the undersigned for Report and Recommendation, by the Honorable Norman A. Mordue, pursuant 28 U.S.C. § 636(b)(1)(B), by an Order dated August 14, 2009.

[2] Although no motion for judgment on the pleadings was filed, the moving party was excused from such filing under General Order No. 18, which states in part: "The Magistrate Judge will treat the proceeding as

## II. Background

Plaintiff applied for DIB on July 26, 2005, alleging an onset date of July 11, 2005 (R. at 56, 79).[3] Plaintiff alleges disability due to back, bilateral knee, and left hand impairments. His application was denied initially on September 2, 2005 (R. at 57-59). Plaintiff filed a request for a hearing on October 4, 2005 (R. at 61).

On March 13, 2007, Plaintiff appeared before the ALJ (R. at 375). The ALJ considered the case *de novo* and, on May 22, 2007, issued a decision finding Plaintiff not disabled (R. at 48-55). Plaintiff requested review by the Appeals Council on June 13, 2007 (R. at 43). Plaintiff's request was granted on June 11, 2008 (R. at 371-74). The Appeals Council issued a decision on August 26, 2008 finding Plaintiff became disabled as of January 9, 2007[4] (R. at 10-11). The Appeals Council's decision became the final decision of the Commissioner. On July 9, 2008, Plaintiff filed this action, challenging the Commissioner's decision to reject his claim from July 11, 2005 to January 9, 2007.

Based on the entire record, the Court recommends that the Commissioner's decision be affirmed.

## III. Discussion

### A. Legal Standard and Scope of Review

A court reviewing a denial of disability benefits may not determine *de novo*

---

if both parties had accompanied their briefs with a motion for judgment on the pleadings . . . ." General Order No. 18. (N.D.N.Y. Sept. 12, 2003).
[3] Citations to the underlying administrative record are designated as "R."
[4] The Appeals Council stated that Plaintiff filed a second application for DIB on June 13, 2007 (R. at 8). Plaintiff's second application was granted with an onset date of May 23, 2007, the day after the ALJ's decision for Plaintiff's first application. Id. However, neither the application nor its approval are in the record. The Appeals Council then reviewed the ALJ's decision for Plaintiff's first application, and ultimately changed Plaintiff's onset date from May 23, 2007, to January 9, 2007 (R. at 8-11). The Appeals Council also based its decision, in part, on an August 3, 2007, orthopedic examination (R. at 9). That report also does not appear to be in the record.

2

whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383 (c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other

words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

The Commissioner has established a five-step sequential evaluation process[5] to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience.

---

[5] This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. §§ 416.920, 404.1520.

Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

### B.   Analysis

#### 1.  The Commissioner's Decision

In this case, the Commissioner made the following findings with regard to factual information as well as the five-step process set forth above: (1) Plaintiff met the earnings requirement of the Act on July 11, 2005, Plaintiff's alleged onset date, through September 30, 2010 (R. at 9); (2) The ALJ's "statements regarding the pertinent provisions of the Social Security Act, Social Security Administration Regulations, Social Security Rulings and Acquiescence Rulings, the issues in the case, and the evidentiary facts, as applicable," were adopted by the Appeals Council into the Commissioner's final decision (R. at 8); (3) "The Appeals council adopt[ed] the findings of the Administrative Law Judge . . . regarding the period from July 11, 2005 through January 8, 2007. However, the Appeals Council d[id] not adopt the Administrative Law Judge's findings regarding whether the claimant is disabled for the period beginning January 9, 2007" (R. at 9); (4) Plaintiff's "degenerative disc disease of the lumbar spine with left lumbar radiculopathy, bilateral osteoarthritis of the knees, status post total right knee replacement, and nerve injury to the left hand" were severe impairments (R. at 10); (5) Plaintiff's impairments, alone or in combination, did not meet or equal an impairment listed in 20 CFR Part 404, Subpart P, Appendix I (R. at 10); (6) Plaintiff's subjective complaints, prior to January 9, 2007, were "not fully credible" (R. at 10); (7) "Prior to

January 9, 2007, the claimant had the residual functional capacity to lift and/or carry 10 pounds, stand and/or walk at least 2 hours in an 8-hour workday and sit about six hours in an 8-hour workday" (R. at 10); (8) Prior to January 9, 2007, Plaintiff was capable of performing sedentary work (R. at 10); (9) "20 CFR 404.1569 and Rule 202.21 and 201.22 in Table No. 2 of 20 CFR Part 404, Subpart P, Appendix 2, direct[ed] a finding that the claimant [was] not disabled for the period from July 11, 2005 through January 8, 2007" (R. at 10); (10)

> As of January 9, 2007, the claimant . . . [could] lift and/or carry 10 pounds or less, stand and/or walk about 2 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday. He has limited ability to push and/or pull with his upper extremities. He can occasionally climb, stoop, kneel, crouch and crawl

(R. at 10); (11) Beginning January 9, 2007, "based on a change in the claimant's residual functional capacity, age, education and work experience, the claimant is found disabled" (R. at 10). Ultimately, the Commissioner found that Plaintiff was disabled as of January 9, 2007 (R. at 10-11).

### 2. Plaintiff's Claims:

Plaintiff argues that the Commissioner's decision contains legal error and is not supported by substantial evidence. Specifically, Plaintiff argues that a) the Commissioner failed to consider relevant evidence; b) the Commissioner erred in applying the treating physician rule; c) the finding that Plaintiff is capable of sedentary work is not supported by substantial evidence; and d) the credibility analysis is flawed.

#### a) The Commissioner Considered All Relevant Probative Evidence

Plaintiff argues that the Commissioner failed to consider pertinent evidence. Plaintiff's Brief, pp. 12-15. Specifically, Plaintiff argues that the ALJ and Appeals Council

ignored a decision of Veterans Affairs ("VA"), dated February 7, 2006, and "MRI reports that showed nerve root impingement/irritation on multiple levels of the lumbar spine." Plaintiff's Brief, p. 12.

On February 7, 2006, the VA found that based on various service-connected injuries as further discussed below, Plaintiff was "entitle[d] to individual unemployability . . . effective July 19, 2005" (R. at 337-41). Neither the ALJ nor the Appeals Council mentioned this report in their decisions. However, an opinion concerning the ultimate issue of disability is an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e)(1). 416.927(e)(1). Moreover, the standards of proof and regulations establishing disability vary from agency to agency. Thus, an opinion or adjudication of disability from an unrelated agency with different rules and standards cannot serve to challenge the Commissioner's prerogatives in establishing disability determinations. See 20 C.F.R. § 404.1504 ("A decision by . . . any other governmental agency about whether you are disabled or blind is based on its rules and is not our decision about whether you are disabled . . . . We must make a disability . . . determination based on social security law. Therefore, a determination made by another agency that you are disabled or blind is not binding on us."). The Court also notes that the ALJ need not discuss every piece of evidence before him. See Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983) ("When, as here, the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability."). Therefore, even though the VA report contained an opinion about Plaintiff's "unemployability," the issue

of disability is reserved to the Commissioner, and the Court can find no error in the Commissioner's failure to discuss the report.

It is also clear from the ALJ's decision that he considered the MRIs and objective tests supporting Plaintiff's claim of disability. For example, the ALJ noted the results of several diagnostic tests, including a July 2005 MRI, a July 2005 nerve conduction study, and an October 2005 nerve conduction study (R. at 50-51). Contrary to Plaintiff's argument, the ALJ specifically acknowledged that an MRI completed in July 2005 "revealed degenerative disc disease with an L4-L5 impingement of the nerve root on the left" and an October 2005 nerve conduction study "revealed mild to moderate left L5 radiculopathy" (R. at 51). Thus, the ALJ clearly considered "MRI reports that showed nerve root impingement/irritation on multiple levels of the lumbar spine." Plaintiff's Brief, p. 12.

### b) Any Flaws in the Commissioner's Application of the Treating Physician Rule are Harmless Errors

Plaintiff argues that the ALJ erred in failing to grant great weight to "the objective tests and opinions of treating physicians." Plaintiff's Brief, p. 15.

According to the "treating physician's rule,"[6] the ALJ must give controlling weight to the treating physician's opinion when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); see also Green-Younger v. Barnhart, 335 F.3d 99, 105 (2d Cir. 2003); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000). "Failure to provide 'good reasons' for not crediting the opinion of a

---

[6] "The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

claimant's treating physician is ground for remand." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (citing Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998)).

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances. Under 20 C.F.R. § 404.1527(d)(1)-(6), the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. See de Roman, 2003 WL 21511160, at *9 (citing C.F.R. § 404.1527(d)(2)); see also Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998).

"[T]he treating physician rule applies to the Appeal's Council when the new evidence at issue reflects the findings and opinions of a treating physician." Shrack v. Astrue, 2009 WL 712362, at *3 (D. Conn. Mar. 17, 2009) (citing Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999)). "Accordingly, the Appeals Council must give good reasons for the weight it assigns to a plaintiff's treating physician's opinion." Id.

At the outset, the Court notes that "objective tests" are not medical opinions. 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2) ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."). As such, any clinical or diagnostic techniques in

9

the record are not entitled to weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (requiring the Commissioner to weigh "every medical opinion," unless a treating source has been given controlling weight). Thus, the ALJ did not err in failing to weigh the objective tests.

Plaintiff failed to identify the treating physicians whose opinions the ALJ allegedly ignored.[7] The Court therefore assumes Plaintiff is referring to the Rome Veterans Affairs Clinic ("RVAC") and the Syracuse Veterans Affairs Medical Center ("SVAMC").[8] Both the RVAC and the SVAMC were the only individuals or organizations Plaintiff listed in a disability report when asked "who may have medical records or other information about your illnesses, injuries or conditions" (R. at 102). In that same report, Plaintiff also indicated that nurse practitioner Mary Lefkowicz, an employee of SVAMC, prescribed all his medications (R. at 103, 244). Moreover, the RVAC and the SVAMC were the only facilities with a treatment relationship with Plaintiff to submit evidence. It appears that the VA finding of "unemployablitly" is founded on the reports of the doctors of these two organizations.

Neither the RVAC nor the SVAMC submitted opinions concerning Plaintiff's functional limitations. Thus, any medical opinions from those two facilities would be found in treatment notes and various reports created by the organizations for their

---

[7] Plaintiff states in the medical history of his brief, that Dr. Ljaamo was "plaintiff's treating occupational medicine specialist." Plaintiff's Brief, p. 5. It is unclear whether Plaintiff is alleging that Dr. Ljaamo was a treating physician. Plaintiff does not mention Dr. Ljaamo again when arguing that Plaintiff's treating physicians should have been given great weight. However, it is clear that Dr. Ljaamo was not in fact Plaintiff's treating physician. The record documents only one examination with Dr. Ljaamo, June 29, 2007 (R. at 37). Moreover, Dr. Ljaamo noted that he was completing an "Occupational Medicine *Consultation* Report" (R. at 37) (emphasis added).

[8] Dr. Richter, at the RVAC, was identified as Plaintiff's primary care physician in treatment notes (R. at 243). However, because Plaintiff has not identified Dr. Richter as his sole treating physician, the Court will not make that assumption but will consider him one of Plaintiff's treating physicians.

internal use. The only opinion that appears to be created for purposes of Plaintiff's disability claim was submitted by nurse practitioner Ms. Lefkowicz, an employee of the SVAMC (R. at 370). However, this letter merely opined that Plaintiff was unemployable and offered no functional limitations. Id. Because Plaintiff failed to identify both the treating physicians and opinions the ALJ allegedly ignored, it is unclear whether Plaintiff is claiming the Commissioner erred with respect to the Lefkowicz's letter, or the various treatment note opinions from the RVAC and SVAMC. The Court will therefore address both arguments.

On May 7, 2007, nurse practitioner Ms. Lefkowicz wrote a letter[9] stating that Plaintiff's "back injury, and resulting chronic pain, yield him unsuitable for employment" (R. at 370). The ALJ afforded this opinion "little, if any, evidentiary weight due to the fact that a nurse practitioner is not an acceptable medical source. In addition, this statement is quite vague and a conclusion that the claimant is 'disabled' is reserved for the Commissioner" (R. at 52). The ALJ's analysis is without error. First, the ALJ was correct in noting that Ms. Lefkowicz is not an acceptable medical source. 20 C.F.R. 404.1513(a). As such, she cannot offer a medical opinion. 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). Second, Ms. Lefkowicz's letter offers little more than her opinion that Plaintiff is unemployable. However, an opinion concerning the ultimate issue of disability is reserved to the commissioner and is not considered a medical opinion requiring weight. 20 C.F.R. §§ 404.1527(a)(2), (e)(1), (d)(2), 416.927(a)(2) 404.1527(e)(1), (e)(1), (d)(2). Thus, the Court can find no error in the ALJ's discussion of the weight to afford Ms. Lefkowicz's letter.

---

[9] The letter was addressed "To Whom It May Concern" (R. at 370).

Finally, any flaws in the Commissioner's analysis of weight for the various treatment note opinions amount to harmless error. Neither the ALJ nor the Appeals Council stated what weight they afforded the various opinions found in treatment notes from the SVAMC and the RVAC. However, the ALJ and Appeals Council discussed the pertinent evidence submitted by these two facilities. The ALJ noted various clinical and diagnostic tests, plaintiff's complaints, diagnoses by Plaintiff's physicians, and other opinions by Plaintiff's physicians concerning Plaintiff's knee, back, and hand impairments (R. at 50-52). These findings of fact by the ALJ were adopted by the Appeals Council into the Commissioner's final decision (R. at 8-9).

Plaintiff has neither identified any functional limitations in the treatment notes nor articulated any effect on the Commissioner's failure to grant Plaintiff's treating physician's great weight. The Court has also been unable to locate any functional limitations placed on Plaintiff by either the RVAC or the SVAMC during the time period in question. The medical opinions found in the treatment notes are comprised largely of diagnoses. The Commissioner adopted many of these diagnoses, ultimately finding that Plaintiff's "degenerative disc disease of the lumbar spine with left lumbar radiculopathy, bilateral osteoarthritis of the knees, status post total right knee replacement, and nerve injury to the left hand" were severe impairments (R. at 10). Notably, Plaintiff has not argued that the Commissioner erred in failing to find any of Plaintiff's other diagnoses to be severe impairments. Because the Commissioner's final decision includes a thorough discussion of the treatment notes, and Plaintiff has not articulated any way that the Commissioner's decision conflicted with these treatment note opinions, the Commissioner's failure to state the weight he granted to the treatment note opinions

amounts to harmless error. See Jones v. Barnhart, 2003 WL 941722, at *10 (S.D.N.Y.) (citations omitted) (finding harmless error where the ALJ failed to state the weight he afforded the treating physicians' opinions because "he engaged in a detailed discussion of these findings, and his decision does not conflict with them"); Walzer v. Chater, 1995 WL 791963, at *9 (S.D.N.Y. 1995) ("[T]he ALJ's failure to [discuss a report completed by Plaintiff's treating physician] was harmless error, since his written consideration of [the] report would not have changed the outcome of the ALJ's decision."); Pease v. Astrue, 2008 WL 4371779, at *8 (N.D.N.Y. Sept. 17, 2008) (citations omitted) ("The ALJ provided a detailed summary and analysis of the reports and records of all treating and examining physicians . . . . Therefore, the ALJ's failure to comment on the weight of evidence was harmless error, and does not provide a basis for a remand to the Commissioner.").

### c) The Commissioner's Finding that Plaintiff Could Perform Sedentary Work is Supported by Substantial Evidence

Plaintiff argues that the Commissioner's finding that Plaintiff could perform sedentary work is not supported by substantial evidence.[10] Plaintiff's Brief, p. 11, 16.

The Appeals Council adopted the ALJ's finding that "[p]rior to January 9, 2007, the claimant had the residual functional capacity to lift and/or carry 10 pounds, stand and/or walk at least 2 hours in an 8-hour workday and sit about six hours in an 8-hour workday. Therefore, he could perform work at the sedentary level of exertion" (R. at 10).

---

[10] Sedentary work deals solely with exertional limitations. See 20 C.F.R. § 404.1569a(a) ("The classification of a limitation as exertional is related to the United States Department of Labor's classification of jobs by various exertional levels (sedentary, light, medium, heavy, and very heavy)); SSR 83-11, 1983 WL 31252, at *2 (S.S.A.) ("The RFC is defined by criteria that establish an exertional capability for a full range . . . of the work existing at the level of exertion in question (sedentary, light, or medium)."). Plaintiff has not argued that the RFC is not supported by substantial evidence. Thus, the Court will not address any evidence supporting Plaintiff's non-exertional limitations.

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

§ 404.1567(a).

At the request of the SSA, Plaintiff underwent a consultative examination with Dr. Ganesh on August 18, 2005 (R. at 300-02). Dr. Ganesh opined that Plaintiff had the following moderate exertional limitations: sitting, standing, walking, lifting, carrying, pushing, and pulling (R. at 302). On August 31, 2005, a disability analyst completed a physical RFC at the request of the SSA (R. at 304-09). The analyst found that Plaintiff could occasionally lift and/or carry ten pounds, frequently lift and/or carry less than ten pounds, stand and/or walk at least 2 hours in an eight-hour workday, sit about six hours in an eight-hour workday, and had an unlimited ability to push and/or pull, other than as shown for lift and/or carry (R. at 305). The findings from both Dr. Ganesh and the disability analyst are consistent with the Commissioner's conclusion that Plaintiff could perform sedentary work.

Moreover, the ALJ noted in his credibility analysis that Plaintiff's daily living activities were "consistent with a sedentary level of exertion" (R. at 54). For example, Plaintiff testified that he "sits and rests for much of the day" and could "lift a laundry basket, groceries and a gallon of milk with no problems" (R. at 54).

Dr. Ljaamo[11] was the only physician to complete a function-by-function

---

[11] It is unclear how evidence from Dr. Ljaamo was included in the record. Because Plaintiff was examined by Dr. Ljaamo after the ALJ's decision, it could not have been included in the record at that time (R. at 37, 55). A letter from Plaintiff's attorney to the Appeals Council suggests that the evidence was submitted directly to the Appeals Council (R. at 34). Plaintiff also alleges that he submitted Dr. Ljaamo's records to

assessment (R. at 35-36). Dr. Ljaamo examined Plaintiff on June 29, 2007, at the request of Dr. Richter, a physician at the RVAC (R. at 37). Dr. Ljaamo opined that Plaintiff could lift and carry ten pounds occasionally, lift and carry ten pounds frequently, stand and/or walk for less than one hour in an eight-hour day, and sit in an upright position for less than two hours in an eight-hour day (R. at 35). Thus, while Dr. Ljaamo's opinions concerning Plaintiff's ability to sit, stand, and walk, are more restrictive than the ALJ's findings, the opinions from Dr. Ganesh and the disability analyst, as well as Plaintiff's own statements, constitute substantial evidence to support the Commissioner's finding that Plaintiff could perform sedentary work.

### d) The Commissioner's Credibility Analysis is Supported by Substantial Evidence

Plaintiff argues that the ALJ erred in analyzing Plaintiff's credibility. Plaintiff's Brief, pp. 12, 18-19, 20-22.

"[A] claimant's subjective evidence of pain is entitled to great weight where . . . it is supported by objective medical evidence." Simmons v. U.S. R.R. Retirement Bd., 982 F.2d 49, 56 (2d Cir. 1992) (citations omitted). "However, the ALJ is 'not obliged to accept without question the credibility of such subjective evidence.'" Martone v. Apfel, 70 F.Supp.2d 145, 151 (N.D.N.Y. 1999) (quoting Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979)). In analyzing credibility, the ALJ must first determine whether the claimant has medically determinable impairments, "which could reasonably be expected

---

the Appeals Council for "the pending appeal and the new application." Plaintiff's Brief, p. 2. However, in its decision, the Appeals Council stated that it had not received any new evidence (R. at 8). Regardless, "[t]o determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record." Williams ex rel. Williams, 859 F.2d at 258. The Court also notes that on September 11, 2008, the record was certified as being "a full and accurate transcript of the entire record of proceedings relating to this case." Thus, the Court will include evidence from Dr. Ljaamo in this decision.

to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(a); S.S.R. 96-7p, 1996 WL 374186, at *2. Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. S.S.R. 96-7p, 1996 WL 374186, at *2; 20 C.F.R. § 404.1529(c); Borush, 2008 WL 4186510, at *12. Because "an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone," S.S.R. 96-7p, 1996 WL 374186, at *3, an ALJ will consider the factors listed in the regulations.[12] 20 C.F.R. §§ 416.929(c)(3)(i)-(vii).

If the ALJ finds Plaintiff's pain contentions are not credible, he must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F.Supp 604, 608 (S.D.N.Y. 1987)).

The ALJ completed the two-step process by "find[ing] that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible" (R. at 54). The ALJ then went on to consider Plaintiff's daily living activities and noted that Plaintiff's testimony was consistent with sedentary work. Id. At other points in his

---

[12] The listed factors are: (i) claimant's daily activities; (ii) location, duration, frequency, and intensity of claimant's symptoms; (iii) precipitating and aggravating factors; (iv) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (v) other treatment received to relieve symptoms; (vi) any measures taken by the claimant to relieve symptoms; and (vii) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 416.929(c)(3)(i)-(vii).

decision, the ALJ also discussed several other factors. For example, the ALJ engaged in a thorough discussion of Plaintiff's symptoms and also noted Plaintiff's October 2006 decision to not take analgesics or nonsteroidal anti-inflammatories (R. at 50-52). Therefore, the Court can therefore find no error in the Commissioner's credibility analysis.[13]

## IV.   Conclusion

Based on the foregoing, the Court recommends that the Commissioner's decision denying disability benefits be AFFIRMED in accordance with this recommendation and pursuant to sentence four of 42 U.S.C. Section 405(g).

Respectfully submitted,

*[signature]*

Victor E. Bianchini
United States Magistrate Judge


           Syracuse, New York
DATED:    December 3, 2009

**ORDER**

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

---

[13] The Appeals Council found that Plaintiff's "subjective complaints are credible and supported by the evidence of record, but only to the extent that they relate to the period beginning January 9, 2007. At all other times, the claimant's subjective complaints are not fully credible for the reasons identified in the body of this decision" (R. at 10). Because the Appeals Council specifically adopted the ALJ's findings from July 11, 2005, through January 8, 2007, the Court finds that the Appeals Council adopted the ALJ's credibility analysis up until January 9, 2007 (R. at 9). At that point, the Appeals Council rejected the ALJ's credibility finding and found Plaintiff credible. Therefore, although the Appeals Council did not itself complete the two-step process, by adopting the ALJ's findings the Commissioner's final decision contained a contained a credibility analysis free of legal error and supported by substantial evidence.

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**
*Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

Let the Clerk send a copy of this Report and recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

Victor E. Bianchini
United States Magistrate Judge

Syracuse, New York
DATED:     December 3, 2009